**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **KAREN BYERLY,** | |
| **Plaintiff,** | **Case No. 08 CV 2982** |
| **v.** | |
| **GENERAL MILLS, INC.,** | **Judge Gettleman**<br>**Magistrate Judge Denlow** |
| **Defendant.** | |

**PLAINTIFF'S MEMORANDUM IN LAW IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS</u>**

Plaintiff, KAREN BYERLY, by and through her counsel, LISA KANE & ASSOCIATES, P.C., respectfully submits her Memorandum of Law in Opposition to Defendant's Motion to Dismiss. For the reasons set forth herein, Plaintiff respectfully requests that this Court deny Defendant's motion in its entirety.

**INTRODUCTION**

Plaintiff, a seventeen (17) year employee of Defendant, is a disabled employee for the purposes of the American Disabilities Act, 42 U.S.C. § 12102(2) ("ADA"), as she was born with a bilateral hip deformity which severely limits movement in Plaintiff's left leg and causes tremendous pain, and Plaintiff was diagnosed with fibromyalgia, a disorder classified by the presence of chronic widespread pain and tactile allodynia in 2005, and was perceived by Defendant as having such impairments. (Compl. ¶¶ 8-10, 12.) In spite of her disabilities, Plaintiff's performed, and continues to perform, the essential functions of her job, without reasonable accommodation, as evidenced by her performance evaluations, merit-based raises, bonuses and sales awards. (Compl. ¶11.)[1]

---

[1] The evidence elicited in discovery will reveal that the number of sales awards Plaintiff earned exceeds the quantity of awards earned by numerous members of Food Service upper management.

In 2005, Defendant promoted Tom Pokanowicz, a less qualified non-disabled individual into a Market Manager position instead of Plaintiff, and Pokanowicz held the Market Manager position when he was Plaintiff's direct supervisor beginning in July of 2006, after Plaintiff assumed the Food Service Operator Specialist position.  (Compl. ¶¶13-15.)  In the position of Market Manager, Potkanowicz had control over the terms and conditions of Plaintiff's employment, and Potkanowicz abused his authority over Plaintiff on multiple occasions by publicly humiliating, mocking demeaning, and insulting Plaintiff, in front of and in comparison to her similarly-situated non-disabled coworkers, and even in front of Plaintiff's clients.  (Compl. ¶14.)[2]

When Plaintiff interviewed for the Food Service Operator Specialist position in March 2006, Plaintiff was informed that she would only have to complete six (6) to eight (8) operating calls per week. (Compl. ¶15.)  Operating calls were a physically painful task for Plaintiff to complete because of her disabilities.  (Compl. ¶16.)  Nevertheless, shortly after assuming this position, Potkanowicz began to require Plaintiff to complete ten (10) operating calls per week with "no exceptions." (Compl. ¶15.)  Beginning in February 2007, Plaintiff repeatedly requested Potkanowicz to provide her a reasonable accommodation for her disability, and in response to each request, Potkanowicz countered with the suggestion that Plaintiff volunteer for a demotion to part-time status and insisted that there were "no exceptions" to ten (10) operating calls per week.  (Compl. ¶¶16-18.)  In March 2008, in spite of Plaintiff's repeated requests for accommodation, Defendant's management elevated the quantity of operating calls Plaintiff was required to perform to an average of thirteen (13) to fifteen (15) operating calls per week, which is double the quantity of operating calls Plaintiff was

---

[2]The evidence to be elicited in discovery will reveal that Potkanowitz went so far in his abuse as to tell Plaintiff that "the only thing you have going for you is a pretty smile."

originally required to perform in her position.  (Compl. ¶¶15, 19.)

In addition to Defendant's failure to accommodate Plaintiff's disability, Defendant denied Plaintiff two additional promotions in favor of two less qualified nondisabled individuals.  (Compl. ¶¶20-21, 23.) Plaintiff was not even considered for the unposted Account Manager position in September 2007, even though she was more qualified than the nondisabled individual who was ultimately awarded the position.  (Compl. ¶20.)  In April 2008, Plaintiff was again denied the Marketing Manager position even though Plaintiff met or exceed all the posted job qualifications, and the nondisabled candidate who was ultimately selected for the position did not even meet the posted job qualifications.  (Compl. ¶¶21, 23.)  In response to Plaintiff's expressed interest in the April 2008 position, Potkanowicz wrongfully accused Plaintiff of being an underperformer, informed Plaintiff that her prior experience would not be considered in connection with her application for the position, and falsely stated that Plaintiff could not jump three (3) salary levels on a single promotion. (Compl. ¶22.)

Plaintiff complained on numerous occasions within the actionable time period to Defendant's Human Resources department, Director Krschner, James Williams, and Defendant's Zone Director and Kevin Marsherall, Defendant's Zone Manager, about not being considered for the many promotional opportunities that she was denied at Defendant, but Defendant never took any action to address Plaintiff's complaints.  (Compl. ¶24.)  As demonstrated below, Defendant's arguments are without merit.  Plaintiff suffered discrimination both before and during the actionable time periods, entitling her to present the claims as alleged in her Complaint.

## ARGUMENT

### I.    Standard of Review

3

Federal Rule of Civil Procedure 8(a) establishes a system of notice pleading, requiring only that the plaintiff provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); see Cannella v. Cordell Enters., 980 F. Supp. 272, 273 (N.D. Ill. 1997). Where notice pleading is sufficient, a complaint cannot be dismissed under Rule 12(b)(6) unless no relief may be granted "under any set of facts that could be proved consistent with the allegations." Id. Notice pleading allows for a limited set of facts in the complaint:

> Whether language in a complaint 'can be interpreted' as deficient is immaterial....complaints are construed favorably to their drafters....A complaint need not narrate all relevant facts or recite the law; all it has to do is set out a claim for relief. . . . A plaintiff need not put all the essential facts in the complaint. . . . A court should ask whether relief is possible under any set of facts that could be established consistent with the allegations.

Cannella, 980 F. Supp. at 273. On a motion to dismiss, this Court must focus on the issue of whether the plaintiff remains "entitled to offer evidence to support the claims," rather than whether the plaintiff will ultimately prevail. Cole v. U.S. Capital, Inc., 389 F.3d 719, 724 (7th Cir. 2004). Furthermore, this Court should read a complaint liberally and "accept[] as true all well-pleaded factual allegations in the complaint, and draw[] all reasonable inferences therefrom in the plaintiff's favor." Lutheran Gen. Hosp. v. Wendy's Int'l Inc., 959 F. Supp. 501, 502-503 (N.D. Ill. 1997). "Any ambiguities are likewise resolved in the plaintiff's favor." Koenig v. Waste Mgmt., Inc., 76 F. Supp. 2d 908, 912 (N.D. Ill. 1990).

## II.    Defendant Has No Basis for Dismissing Plaintiff's Background Facts in Support of Her Allegations of Disability Discrimination.

"[E]vidence regarding allegedly discriminatory acts occurring outside the limitations period may be admissible in suits predicated on discrimination within the limitations period." Leffingwell

4

v. Sears, Roebuck & Co., 717 F. Supp. 620, 622 (N.D.Ill. 1989).  See also  Fredricksen v. United

Parcel Serv. Co., No. 06 C 2285, 2006 U.S. Dist. LEXIS 76121, at *18-19 (N.D. Ill. Oct. 19, 2006)

(denying motion to dismiss even if certain allegations were background evidence of discrimination).

(Attached as Ex. A).

        Plaintiff alleges that she was denied two (2) promotions during the actionable time period,

that her requests for reasonable accommodation to Supervisor Potkanowicz  began during the 300-

day statutory time period, and further alleges that Potkanowicz failed to provide reasonable

accommodation occurred within this time period, and in fact, worsened the terms and conditions of

Plaintiff's employment by elevating the quantity of operating calls.   (Compl. ¶¶16-17, 19-23.)

Plaintiff further alleges that she was denied two (2) additional promotions during the actionable time

period.  Because Plaintiff only seeks relief for the actions which occurred during the actionable time

period, and because Plaintiff only uses instances of prior discrimination as foundational background

evidence, this Court should deny Defendant's Motion to Dismiss in its entirety.  See Fredricksen

2006 U.S. Dist. LEXIS at *18-*19.

        Defendant improperly relies upon Mull v. Abbott Lab., No. 07 C 6965, 2008 U.S. Dist.

LEXIS 50599 (N.D. Ill. June 30, 2008), Tragas v. City of Chicago, No. 97 C 8303, 1998 U.S. Dist.

LEXIS 16878 (N.D. Ill. Oct. 23, 1998) and Enright v. Ill. State Police, 19 F. Supp. 2d 844 (N.D. Ill.

Sept. 16, 1998) as a basis for barring Plaintiff's background evidence.  In Mull, Tragas, and Enright,

each respective plaintiff attempted to rely upon the continuing violation doctrine as a means to

circumvent a statute of limitations period with regard to a singular instance of discrimination.  Mull,

2008 U.S. Dist. LEXIS at *7-*9; Tragas, 1998 U.S. Dist. LEXIS at *6-*8; Enright, 19 F. Supp. 2d

at 886-888.  Contrary to the facts presented in Mull, Tragas, and Enright, Plaintiff here is relying on

5

severable instances of Defendant's misconduct in order to provide a factual background for the actionable claims which form the basis of Plaintiff's complaint.  As a result, Plaintiff remains entitled to present the nonactionable instances of Defendant's misconduct as background evidence for her actionable ADA claims.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).  "The existence of past acts and the employee's prior knowledge of their occurrence...does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."

Defendant's reliance on Scarbrough v. Ill. Dept't of Human Servs., No. 07-cv-042-DRH, 2007 U.S. Dist. LEXIS 83743 (S.D. Ill. Nov. 13, 2007) is also misplaced.  In Scarbrough, the Plaintiff put fourth four (4) failure to promote claims, three (3) of which were outside the actionable time period.  Id. at *6-*9.  In this case, Plaintiff is introducing Potkanowicz's promotion in 2005 as background evidence not only of Defendant's discriminatory pattern of failing to promote Plaintiff, but also as evidence of Potkanowicz's credibility, as he was the beneficiary of disability discrimination, was given authority over the terms and conditions of Plaintiff's employment (who he perceived as being disabled) soon after his wrongful promotion, was the decision-maker for at least one (1) promotion Plaintiff alleges not to have received on account of her disabilities, and made the determination that Plaintiff would not receive reasonable accommodation for her disabilities after her repeated requests, but rather, would receive punishment for requesting such accommodation. (Compl. ¶¶10, 13-23.)  Significantly, even Scarbrough specifically approves of the use of statutorily time-barred acts being "used as evidentiary background to bolster Plaintiff's claim if they meet all evidentiary tests of admissibility."  Id. at *8.

**Conclusion**

Based on the specific allegations in her Complaint, Plaintiff presents actionable claims of discrimination pursuant to the ADA.  Defendant's attempt to dismiss a portion of these claims as time-barred entirely disregards the fact Plaintiff is entitled to present the non-actionable instances of Defendant's misconduct as background evidence for her ADA Claim.  Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully Submitted,

KAREN BYERLY

s/Lisa Kane
Lisa Kane, Attorney for Plaintiff

LISA KANE & ASSOCIATES
Attorneys for Plaintiff
120 South LaSalle Street, Suite 1420
Chicago, IL 60603
(312) 606-0383
Attorney Code No. 06203093

# EXHIBIT A

LEXSEE 2006 U.S. DIST. LEXIS 76121

**DANIEL L. FREDRICKSEN, Plaintiff, v. UNITED PARCEL SERVICE CO.,
Defendant.**

**Case No. 06 C 2285**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2006 U.S. Dist. LEXIS 76121*

**October 19, 2006, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted by *Fredricksen v. UPS, 2008 U.S. Dist. LEXIS 32460 (N.D. Ill., Mar. 31, 2008)*

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] The court may dismiss claims pursuant to *Fed. R. Civ. P. 12(b)(6)* if the plaintiff fails to state a claim upon which relief can be granted. In considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. On a motion to dismiss, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims, and a *Rule 12(b)(6)* motion will not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.

*Labor & Employment Law > Discrimination > Disability Discrimination > Enforcement*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > General Overview*
[HN2] Because Illinois has its own anti-discrimination laws and a state agency to investigate discrimination complaints, it is classified as a deferral state. In a deferral state, a plaintiff has 300 days from the date of the alleged adverse employment practice to file a complaint with the

Equal Employment Opportunity Commission or equivalent state agency. *42 U.S.C.S. § 2000e-5(e)(1)*. This 300-day period applies to claims brought under the Americans with Disabilities Act of 1990, *42 U.S.C.S. § 12101 et seq.* Alleged discriminatory acts that do not fall within the relevant 300-day period generally are untimely and are precluded from consideration by the court.

*Labor & Employment Law > Discrimination > Harassment > Racial Harassment > Hostile Work Environment*
*Labor & Employment Law > Discrimination > Harassment > Sexual Harassment > Hostile Work Environment*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > Continuing Violations*
[HN3] Hostile work environment claims are different in kind from discrete acts: their very nature involves repeated conduct. "Discrete acts" of discrimination generally include such acts as termination, failure to promote, denial of transfer, or refusal to hire. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." In a hostile work environment claim, the "unlawful employment practice" cannot be said to occur on any particular day and occurs over some period of time. For this reason, so long as one act contributing to the hostile work environment claim occurs within the 300-day limitations period, the Equal Employment Opportunity Commission charge encompasses all acts within and without the period constituting the same unlawful employment practice.

2006 U.S. Dist. LEXIS 76121, *

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > General Overview*

*Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Discriminatory Conduct*

[HN4] The phrase "terms, conditions, or privileges of employment" evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. Thus, by using this phrase in the Americans with Disabilities Act of 1990, *42 U.S.C.S. § 12101 et seq.*, to define discrimination based on disability, Congress intends that Title I protect disabled men and women from a hostile, discriminatory working environment and provide redress for such harms insofar as they are distinct from "discrete acts" of discrimination.

*Labor & Employment Law > Discrimination > Disability Discrimination > Employment Practices > General Overview*

*Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Employee Burdens*

[HN5] The standards for proving a hostile work environment claim under the Americans with Disabilities Act of 1990, *42 U.S.C.S. § 12101 et seq.*, mirror those required under Title VII of the Civil Rights Act of 1964. A plaintiff must show that his or her work environment is both subjectively and objectively hostile. Whereas a subjectively hostile environment is one in which the employee perceives to be abusive, an objectively hostile environment is one that a reasonable person would find hostile or abusive. In determining whether a plaintiff has met the objective standard, courts must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To amount to hostile workplace environment, the harassment must be so "severe or pervasive" as to alter the conditions of the victim's employment and create an abusive working environment.

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > Continuing Violations*

[HN6] The existence of past acts falling outside the 300-day limitations period for employment discrimination claims and the employee's prior knowledge of their occurrence does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute of limitations bar an employee from using the prior acts as background evidence in support of a timely claim.

**COUNSEL:** [*1] For Daniel L Fredricksen, Plaintiff: Lisa R. Kane, Lisa Kane & Associates, Chicago, IL.

For United Parcel Service Co., Defendant: John Allen Klages, Ellen Marie Girard, Gary R. Clark, Quarles & Brady LLP, Chicago, IL.

**JUDGES:** Virginia M. Kendall, United States District Judge.

**OPINION BY:** Virginia M. Kendall

**OPINION**

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel L. Fredricksen ("Fredricksen" of "Plaintiff") is employed as an Airline Maintenance Technician at United Parcel Service's ("UPS" or "Defendant") Airline Division located at O'Hare Airport in Chicago, Illinois. In February 2004, Plaintiff was diagnosed with leukemia. Plaintiff brings the present action against Defendant under the Americans with Disabilities Act of 1990 ("ADA"), *42 U.S.C. § 12101, et seq.* Plaintiff alleges that beginning in May 2004 when he revealed his disability, Defendant has subjected Plaintiff to a course of hostile, abusive, and harassing conduct ("Count I"). Plaintiff also claims that Defendant unlawfully retaliated against him. ("Count II").

Defendant has moved to dismiss Count I. Because Plaintiff pleaded several incidents of potentially discriminatory conduct within the 300-day [*2] limitations period before he filed his EEOC Charge, Plaintiff has stated a claim under *Federal Rule of Civil Procedure 12(b)(6)*. Additionally, Plaintiff has pleaded other discriminatory activities that may establish an ongoing hostile work environment, thereby incorporating even those acts outside the 300-day limitations period

into one continuing "unlawful employment practice." Therefore, Defendant's Motion to Dismiss Count I is denied.

**Plaintiff's Allegations**

Plaintiff began working for Defendant as an Aircraft Maintenance Technician on April 13, 1992, in Defendant's Airline Division located at O'Hare Airport in Chicago, Illinois. (Compl. P 8.) Throughout his fourteen year tenure with Defendant, Fredricksen performed his duties according the reasonable satisfaction of his employer and had received several awards and continuous solicitation of his expertise by management. (*Id.* at P 10.)

In February 2004, Fredricksen was diagnosed with leukemia. (*Id.* at P 11.) Defendant does not challenge Plaintiff's disability under the ADA, and, for the purposes of this motion, accepts that Plaintiff's leukemia causes Plaintiff a physical or [*3] mental impairment that substantially limits one or more major life activities, including, but not limited to, breathing, sleeping, eating, thinking, and concentrating, as defined by statute. *See 42 U.S.C. § 12102(2).*

Fredricksen revealed to his supervisor, Scott Crane, UPS O'Hare Station Manager, in May 2004 that he was suffering from leukemia. (Compl. P 12.) Since disclosing his disability, Defendant's management has subjected Plaintiff to a course of hostile, abusive, and harassing conduct, including more severe terms and conditions of employment, unwarranted and accelerated disciplinary actions, unfair testing requirements, and threats of suspension and discharge. (*Id.* at P 13.)

In particular, on May 21, 2004, Station Manager Crane verbally disciplined Fredricksen concerning the Levels of Inspection process, accused Plaintiff of not working in the best interests of the company, and documented this discipline in Plaintiff's personal file. (*Id.* at P 14.)

On June 15, 2004, Supervisor Essey Kinfe subjected Plaintiff to unwarranted discipline when she verbally disciplined Fredricksen for failing to sign an aircraft logbook to reflect a minor maintenance [*4] procedure, despite Plaintiff accurately recording the completed status of the procedure in the company's aircraft maintenance computer system. (*Id.* at P 15.) On June 24, 2004, Station Manager Crane harassed and demeaned Plaintiff by

throwing on the table an oversized, reproduced photograph of Plaintiff measuring identified cracks in an aircraft and falsely accusing Plaintiff of "over-inspecting" aircraft with a magnifying glass. (*Id.* at P 16.) Plaintiff's inspection of the aircraft was in adherence to the aircraft manufacturer's documentation, FAA regulations, and Defendant's own policies and procedures when discovering cracks beyond the established limit on an aircraft engine. (*Id.*)

On July 2, 2004, Station Manager Crane indefinitely prohibited Plaintiff from conducting any aircraft pre-departure inspections, and instead relegated Plaintiff to performing back room filing duties. (*Id.* at P 18.) These prohibitions and restrictions on Plaintiff's duties remain in force today, jeopardizing Plaintiff's ability to sustain his position as an Aircraft Maintenance Technician, even though Plaintiff's disability has no bearing on his ability to perform inspections. (*Id.* [*5] )

Similarly situated employees who were not disabled regularly failed to properly document repairs in the aircraft logbook and discovered cracks beyond the established limit on aircraft engines without verbal discipline and consequence. (*Id.* at PP 15, 19.)

Nearly a year later, on June 1, 2005, Plaintiff complained to Supervisor Kinfe that prohibiting Plaintiff from conducting aircraft pre-departure inspections was in violation of the terms of the Collective Bargaining Agreement, interfered with Plaintiff's abilities to perform his job, and was discriminatory. (*Id.* at P 21.) The day after, on June 2, 2005, Supervisor Kinfe confronted Plaintiff claiming that he failed to take a required DC8 CAT training test, although the Plaintiff had not been notified previously that he was required to take the test. (*Id.* at P 22) Kinfe mandated that Plaintiff complete the training test in less than the thirty days regularly afforded to employees to complete such tests. (*Id.*) On June 3, 2005, Supervisor Kinfe forced Plaintiff to complete the DC8 CAT training test immediately, in violation of Defendant's own policies and procedures. (*Id.* at P 23.) Fredricksen failed to pass the [*6] test. (*Id.*)

On June 10, 2005, Defendant convened a fact-finding hearing concerning Plaintiff's failed DC8 CAT training test without previously issuing any charges against him and in violation of the Collective Bargaining Agreement. (*Id.* at P 24.) Defendant also issued Plaintiff a warning letter without seeking prior approval from the Labor Relations Department. (*Id.*) Defendant then

required Plaintiff to retake the DC8 CAT test within seven days, when Defendant's own procedures generally afford technicians fifteen days for retaking such a test. (*Id.* at P 26.) Fredricksen subsequently passed his second DC8 CAT training test on June 17, 2005. (*Id.*)

Similarly situated non-disabled employees received notice thirty days in advance in which to complete the training test and have failed such tests on at least one occasion without consequence. (*Id.* at P 25.) Likewise, similarly situated employees who are not disabled received fifteen days notice to study and retake training tests. (*Id.*)

On June 21, 2005, Supervisor Kinfe confronted Plaintiff for failing to obtain additional work after completing an initial assignment, when two similarly situated non-disabled technicians [*7] also were not performing work at the same time. (*Id.* at P 28.) When Fredricksen asked why he was being harassed, Supervisor Kinfe admitted that he had been told to "single [Plaintiff] out and ride [Plaintiff]." (*Id.*)

Defendant initiated a second fact-finding conference on July 19, 2005, this time accusing Plaintiff of clocking out prior to the end of an assigned overtime shift on July 6, 2005. (*Id.* at P 29.) On July 6, Fredricksen worked a two hour overtime shift in addition to his ten hour shift assigned by Supervisor Kinfe. (*Id.* at P 30.) When Plaintiff's overtime shift ended he clocked out. Supervisor Alex Restreppo verbally reprimanded Fredricksen for punching out. (*Id.*) Plaintiff advised Supervisor Restreppo he was fatigued due to his medical condition and when Restreppo failed to respond, Plaintiff ended his shift. (*Id.*) After the July 19, 2005, fact-finding hearing, Station Manager Crane issued Plaintiff a Notice of Intent to Suspend him for thirty days asserting that Plaintiff was not working in the best interest of the company. (*Id.* at P 31.) Again, Defendant did not seek approval of the Labor Relations Department prior to issuing the Suspension [*8] Letter. (*Id.*)

On August 10, 2005, Fredricksen requested accommodation pursuant to the ADA to utilize his "Option Weeks" and "Optional Holiday" on a one day at a time basis for the purpose of receiving necessary medical treatment and recuperation from his condition. (*Id.* at P 33.) Although the request would require procedural modification, Defendant refused to accept specific information from Plaintiff's physician supporting the need for this accommodation and refused to grant

Plaintiff the ability to utilize one week of vacation and holiday time on a day to day basis. (*Id.* at PP 33, 34.)

Beginning in September 2005, Defendant increasingly assigned Plaintiff insignificant office paperwork tasks and failed to properly issue Plaintiff assignments in accordance with his position as an Aircraft Maintenance Technician. (*Id.* at P 35.) Station Manager Crane specifically directed supervisors to assign Fredricksen these menial tasks "because of [Plaintiff's] serious health problems." (*Id.*)

In September 2005, an arbitration ruling required Defendant to expunge any and all disciplinary actions taken against Aircraft maintenance Technicians based on the improper development [*9] and implementation of certification procedures and/or guidelines. (*Id.* at P 36) However, Defendant refused to remove any of the discipline in Plaintiff's personal file which relied upon the challenged certification provisions, despite removing similar discipline previously issued to similarly situated, non-disabled employees. (*Id.* at PP 36, 37.)

On September 7, 2005, Defendant forced Plaintiff to cover a Temporary Duty assignment in Lansing, Michigan, in violation of the posting requirements of the Collective Bargaining Act. (*Id.* at P 38.) Plaintiff filed a grievance with Defendant. (*Id.* at P 39.)

On October 7, 2005, Defendant disciplined Plaintiff for missing revision to a Technical Publications Manual, despite the manuals being accessible and frequently referenced by numerous aircraft maintenance personal, including management. (*Id.*)

Similarly situated non-disabled employees were not singled out for failing to obtain additional work at the same time as Plaintiff, were not subjected to discipline by Defendant for failing to complete their assigned overtime shift, were not forced to endure a tainted disciplinary record after the arbitration ruling, nor have been [*10] held accountable and threatened with discipline for missing revisions to a manual. (*Id.* at PP 28, 32, 37, 40.)

Plaintiff reported to Defendant his supervisors' abusive and hostile treatment through all available channels, including to his supervisors, managers, the human resources department at another facility, and the Corporate Hot Line, but no investigative efforts were made, no interviews conducted, and no action was taken to investigate the alleged harassment Plaintiff endured

based on his disability. (*Id.* at P 41.)

Plaintiff filed a Charge of Discrimination against Defendant with the Equal Opportunity Commission ("EEOC") on August 23, 2005. (*Id.* at P 6.) On May 17, 2006, Plaintiff filed an additional Charge of Discrimination against Defendant with the EEOC. (*Id.*) The EEOC issued Plaintiff a Notice of Right to Sue on his first Charge of Discrimination on January 31, 2006, and on his second Charge of Discrimination on May 31, 2006. (*Id.*)

## Standard of Review

[HN1] The court may dismiss claims pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* if the plaintiff fails "to state a claim upon which relief can [*11] be granted." *Fed. R. Civ. P. 12(b)(6)*. In considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert, 344 F.3d 655, 657 (7th Cir. 2003)*. On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims," *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*, and a *Rule 12(b)(6)* motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*.

## Discussion

Defendant argues that Count I of Plaintiff's Second Amended Complaint -- Plaintiff's ADA discrimination claim -- should be dismissed because Plaintiff failed to file his EEOC Charge(s) before the 300-day limitation period expired; therefore, Plaintiff's claim is time barred.

[HN2] Because Illinois has its own anti-discrimination laws and a state agency to investigate discrimination complaints, it [*12] is classified as a deferral state. *Sharp v. United Airlines, Inc., 236 F.3d 368, 372 (7th Cir. 2001)*. In a deferral state, a plaintiff has 300 days from the date of the alleged adverse employment practice to file a complaint with the EEOC or equivalent state agency. *Id.; 42 U.S.C. § 2000e-5(e)(1)*. This 300-day period applies to claims brought under the ADA. *Stepney v. Naperville School Dist. 203, 392 F.3d 236, 239 (7th Cir. 2004)* ("Because

the ADA'S enforcement provision expressly incorporates *§ 2000e-5 of Title VII*, claims for discrimination under the ADA also must be filed within 300 days 'after the alleged unlawful employment practice occurred'"), citing *42 U.S.C. § 2000e-5(e)(1), incorporated by 42 U.S.C. § 12117(a)*. Alleged discriminatory acts that do not fall within the relevant 300-day period generally are untimely and are precluded from consideration by the Court. *Koelsch v. Beltone Elec. Corp., 46 F.3d 705, 707 (7th Cir. 1995)*.

Plaintiff filed his first EEOC charge on August 23, 2005. Thus, counting 300 days back from the date of Plaintiff's [*13] Charge, the alleged adverse employment action had to occur on or after October 27, 2004, to fall within the 300-day limitations period. Several alleged discriminatory acts occurred in May and June 2004, well before October 27, 2004. However, Plaintiff argues that Defendant, "[b]eginning in May 2004 and continuing to the present . . . has subjected Plaintiff to a course of hostile, abusive, and harassing conduct because of his actual or perceived disability, leukemia." (Compl. P 13.) Although somewhat cryptically alleged, Plaintiff is arguing that Defendant has subjected Plaintiff to a "hostile work environment," in which case, acts occurring outside of the 300-day limitation period are deemed part of the same unlawful employment practice and not time barred. *See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002)* ("Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work [*14] environment").

[HN3] Hostile work environment claims are different in kind from discrete acts: their very nature involves repeated conduct. *See id. at 115* ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). "Discrete acts" of discrimination generally include such acts as termination, failure to promote, denial of transfer, or refusal to hire. *Id. at 114*. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." *Id.* In a hostile work environment claim, the "unlawful employment practice" cannot be said to occur on any particular day and occurs over some period of time. For this reason, so long as one

act contributing to the hostile work environment claim occurs within the 300-day limitations period, the EEOC Charge encompasses all acts within and without the period constituting the same unlawful employment practice. *Id. at 118.*

The first question the Court must answer is whether a "hostile work environment" claim is even cognizable under the Title I of the ADA. [*15] Whereas, the Supreme Court and the 7th Circuit have recognized a separate claim for a hostile work environment in Title VII cases, it is still uncertain if such a claim exists under Title I. *See Silk v. City of Chicago, 194 F.3d 788, 803 (7th Cir. 1999)* ("This circuit has not recognized explicitly an ADA claim based on hostile environment or harassment"); *see Mannie v. Potter, 394 F.3d 977, 982 (7th Cir. 2005)* ("Although we have not yet decided whether a claim for hostile work environment is cognizable under the ADA or the Rehabilitation Act, we have assumed the existence of such claims where resolution of the issue has not been necessary").

The congressional intent of both Title I and VII are the same: to protect individuals from discrimination in the "terms, conditions, and privileges of employment." *Compare ADA, § 12112(a)* ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to...terms, conditions, and privileges of employment.") *with Title VII, § 2000e-2(a)(1)* ("It shall be an unlawful employment practice for an employer (1) to fail or refuse to [*16] hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."). [HN4] "[T]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment, which includes require people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift System, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).* Thus, by using this phrase in the ADA to define discrimination based on disability, Congress intended that Title I protect disabled men and women from a hostile, discriminatory working environment, and provide redress for such harms insofar as they are distinct from "discrete acts" of discrimination. *See Silk, 194 F.3d at 803* ("[A hostile work environment] claim 'would seem to arise under the

general prohibition against discrimination with respect to terms or conditions of employment contained in [*42 U.S.C.] § 12112(a)'...which provides that it [*17] is unlawful to discriminate against a disabled employee in regard to any 'term, condition, or privilege of employment'").

[HN5] The standards for proving a hostile work environment claim under the ADA mirror those required under Title VII. *See Mannie, 394 F.3d at 982; Silk, 194 F.3d at 804-05.* A plaintiff must show that his or her work environment was both subjectively and objectively hostile. *See Harris, 510 U.S. at 21.* Whereas, a subjectively hostile environment is one in which the employee perceives to be abusive, an objectively hostile environment is one that a reasonable person would find hostile or abusive. *See id.; Silk, 194 F.3d at 805.* In determining whether a plaintiff has met the objective standard, courts must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris, 510 U.S. at 23.* To amount to hostile workplace environment, the harassment must be "so 'severe or pervasive' as to 'alter [*18] the conditions of [the victim's] employment and create an abusive working environment.'" *Silk, 194 F.3d at 804,* quoting *Faragher v. City of Boca Raton, 524 U.S. 775, 786, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998).*

Last, even if an ADA hostile work environment claim was not available to the Plaintiff, dismissing Plaintiff's claim of discrimination as time barred would be inappropriate. Plaintiff pleaded nine instances of allegedly discriminatory conduct based on his disability that fall within the 300-day limitations period. Such allegations are sufficient to survive a motion to dismiss. Moreover, [HN6] "[t]he existence of past acts [falling outside the 300-day limitations period] and the employee's prior knowledge of their occurrence?does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statue bar an employee from using the prior acts as background evidence in support of a timely claim." *Morgan, 536 U.S. at 113.*

## Conclusion and Order

At this stage it is only necessary to inquire whether

2006 U.S. Dist. LEXIS 76121, *18

Plaintiff has presented some [*19] set of facts that may entitle plaintiff to relief upon further presentation of the evidence. The Court will not decide now whether the allegations falling outside of the 300-day limitations period constitute part of an ongoing hostile work environment or are entitled treatment as background evidence of discrimination under *Morgan* because the Complaint survives based on Plaintiff's discriminatory allegations that fall within the 300-day limitations period. Accordingly, Defendant's Motion to Dismiss Count I is denied.

So ordered.

Virginia M. Kendall, United States District Judge

Northern District of Illinois

Date: October 19, 2006