## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **KAREN BYERLY,** | |
| **Plaintiff,** | |
| | **Case No. 08 CV 2982** |
| **v.** | |
| | **Judge Gettleman** |
| **GENERAL MILLS, INC.,** | **Magistrate Judge Denlow** |
| **Defendant.** | **Jury Trial Requested** |

### FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, KAREN BYERLY, by and through her counsel, LISA KANE & ASSOCIATES, P.C., and complaining of Defendant, GENERAL MILLS, INC., states as follows:

### PRELIMINARY STATEMENT

1.       This is an action seeking redress for violations of rights guaranteed to Plaintiff by Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 et seq and by the laws of the State of Illinois.  Plaintiff seeks mandatory injunctive relief and damages to redress the discriminatory employment practices as engaged in by Defendant.

### JURISDICTION

2.       Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection of and to redress deprivation of rights secured by 42 U.S.C. § 12101 et seq.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  With respect to Plaintiff's state law claims, this Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

### VENUE

3.       Venue is proper under 28 U.S.C. § 1391 (b)(1) and (2).

**PARTIES**

4.    Plaintiff, KAREN BYERLY, is a United States citizen who resides in Gurnee, Illinois.

5.    Defendant,  GENERAL MILLS, INC., is corporation properly organized and sanctioned by the laws of the state of Delaware, which has continuously and does now employ more than fifteen (15) employees, and at all relevant times did, and continues to do business in Illinois. Defendant is engaged in an industry that affects commerce and is an employer for the purposes of 42 U.S.C. § 12101 et seq.

**PROCEDURE**

6.    Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on May 2, 2008.  The EEOC issued Plaintiff a Notice of Right to Sue on May 13, 2008, which was received on May 15, 2008.  The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice.  Plaintiff initiated this action within said ninety (90) day period.

**COUNT I - ADA DISABILITY DISCRIMINATION**

7.    Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

8.    At all times relevant to this action, Plaintiff has been an individual with multiple disabilities including being born with a bilateral hip deformity, which severely limits movement in Plaintiff's left leg and causes tremendous pain.  Additionally, in approximately 2005, Plaintiff was diagnosed with fibromyalgia, a disorder classified by the presence of chronic widespread pain and tactile allodynia.

2

9.      Plaintiff is considered an individual with disabilities for the purposes of the ADA, 42 U.S.C. § 12102(2), in that she suffers from physical impairments that substantially limit her ability to walk, a major life activity, and is regarded by Defendant as having such impairments.

10.     Plaintiff, a seventeen (17) year employee of Defendant, has a record of her medical disabilities and was perceived by Defendant as having such impairments.

11.     For approximately the first three (3) years of Plaintiff's employment, Plaintiff and one other disabled individual, Mike Brady, who was also disabled in the major life activity of walking, were the only individuals in Plaintiff's department who were required to have annual physicals, and the reason Plaintiff was given by Defendant for the annual physical requirement was because of her disability.

12.     Plaintiff is a qualified individual with a disability for purposes of the ADA, 42 U.S.C. § 12111(8), in that she could and did at all times, and continues to, perform the essential functions of her job without reasonable accommodations, and Defendant regarded Plaintiff as having physical impairments that substantially limited her major life activities.

13.     Plaintiff began her employment with Defendant in May 1991 as a Territory Manager II. Throughout her seventeen (17) year tenure with Defendant, Plaintiff performed to the reasonable satisfaction of Defendant, as evidenced by her promotion to Senior Territory Manager in 2003, her performance evaluations, merit-based raises, bonuses, and awards, including Defendant's "Ring of Recognition." Plaintiff has multiple shelves of merit-based sales awards in her office, and the number of sales awards Plaintiff earned exceeds the quantity of awards earned by numerous members of Food Service upper management.

14.     In 2005, Plaintiff was denied a promotion to the unposted Market Manager position.

3

This position was given Tom Potkanowicz ("Supervisor Potkanowicz"), an individual with less experience in the food services industry who did not possess a disability of any kind.

15.     Plaintiff was transferred to the Food Service Operator Specialist position in July of 2006. As a result, Supervisor Potkanowicz became Plaintiff's direct supervisor. Since Supervisor Potkanowicz became Plaintiff's direct supervisor in 2006, with authority over the terms and conditions of Plaintiff's employment, Plaintiff has been subjected to a campaign of hostile, abusive, and harassing and discriminatory conduct in her employment with Defendant. Examples of such conduct include:

a.     Supervisor Potkanowicz repeatedly demeaned and belittled Plaintiff on a regular basis by calling her "stupid," an "idiot," and a "stupid idiot," and chastised Plaintiff for her intelligence in front of and in comparison to her similarly situated non-disabled coworkers on multiple occasions. Pocanowitz went so far in his abuse as to tell Plaintiff that "the only thing you have going for you is a pretty smile."

b.     Supervisor Potkanowicz publically humiliated, mocked, and demeaned Plaintiff at food shows in front of Defendant's customers in an attempt to damage Plaintiff's professional relationships with Defendant's customers and undermine Plaintiff's ability to successfully perform in her position as Food Service Operator Specialist. In one instance, Supervisor Potkanowicz urged Plaintiff to stand up in front of approximately fifteen (15) of her colleagues during a food show and shouted, "[a]nd Karen is playing the part of Vanna White." Supervisor Potkanowicz does not humiliate and mock Plaintiff's similarly situated non-disabled coworkers at food shows or in front of customers.

16.     When Plaintiff interviewed for the Food Service Operator Specialist position with

4

Michael Krschner, Defendant's Director of Sales ("Director Krschner") in March 2006, Plaintiff was informed that she would only have to complete six (6) to eight (8) operating calls per week. Shortly after assuming the Food Service Operating Position, Supervisor Potkanowicz began to require Plaintiff to make ten (10) operating calls per week with "no exceptions."

17.     In February 2007, Plaintiff began requesting that Supervisor Potkanowicz provide Plaintiff a reasonable accommodation for her disability, which substantially limits her movement, by permitting her to make fewer than ten (10) operating calls per week because this was a physically painful task requiring substantially more time to perform than her similarly situated non-disabled coworkers on account of her disabilities.

18.     Supervisor Potkanowicz denied Plaintiff's request for reasonable accommodation, insisting that there were "no exceptions," and Defendant continued to require that Plaintiff continue to perform at least ten (10) operating calls per week, even though, on information and belief, Plaintiff's non-disabled coworkers also have difficulty completing ten (10) operating calls per week.

19.     In response to each of Plaintiff's requests for reasonable accommodation for her disability, Supervisor Potkanowicz suggested that Plaintiff volunteer for a demotion to part-time status.

20.     Despite her requests, in March 2008, Plaintiff was informed by Defendant's management that she would have to perform an average of thirteen (13) to fifteen (15) operating calls per week, and that individuals holding the Food Service Operating position who did not meet this number would be subject to discipline.

21.     In September 2007, the unposted Account Manager position at Defendant became available, but Plaintiff was never considered for this position. This position was ultimately awarded

5

to Karl Watson, an individual from outside the company with no disabilities who possessed substantially less experience than Plaintiff.

22.    In April 2008, the Marketing Manager position became available.  Plaintiff met or exceeded all the posted job qualifications in terms of her strong history of job performance at Defendant, her experience, and her seventeen (17) year tenure of employment with Defendant.  As a result, Plaintiff expressed interest in this position.

23.    In response to Plaintiff's expressed interest in the position, Supervisor Potkanowicz accused Plaintiff of being an underperformer, informed her that her prior experience would not be considered in applying for this position, and falsely stated that Plaintiff could not jump three (3) salary levels on a single promotion. Contrary to Supervisor Potkanowicz's representations to Plaintiff, both John Dobee and Betty Woolf, non disabled employees, were both given the opportunity to jump three (3) salary levels on a single promotion.

24.    The Marketing Manager position was ultimately awarded by Supervisor Potkanowicz to Karl Watson, a less qualified individual who did not meet the posted requirements of the Marketing Manager position because he had less than the required one (1) year of tenure at Defendant, which is required for the position.  Karl Watson is an individual who is not disabled. Had Plaintiff received the Marketing Manager position, she would have been able to delegate many of her physical responsibilities to nondisabled individuals, resulting in her not needing any reasonable accommodations for her disability from Defendant.

25.    Plaintiff complained to Defendant's Human Resources department on numerous occasions about not being considered for multiple promotional opportunities at Defendant.  Further, Plaintiff also complained to Director Krschner, James Williams, Defendant's Zone Director and

6

Kevin Marsherall, Defendant's Zone Manager about being denied multiple promotional opportunities.   On information and belief, Defendant never took any action to address its discriminatory employment practices in response to Plaintiff's complaints.

26.    Defendant did not subject Plaintiff's similarly situated co-workers, who were not disabled, to the adverse terms and conditions of employment to which it subjected Plaintiff.

27.    As a direct result of the Defendant's aforementioned deliberate and malicious acts of discrimination, Plaintiff has been forced to endure adverse terms and conditions of her employment with Defendant causing Plaintiff substantial injury, including, but not limited to, emotional pain and suffering, and lost wages and benefits.

28.    The aforementioned deliberate and malicious acts of discrimination further caused Plaintiff to suffer an elevated level of stress and depression, causing her to suffer severe physical symptoms of pain from her disabilities, resulting in her having to see a neurologist and a neuroscience doctor for the treatment of her symptoms.

29.    The aforementioned acts and omissions of Defendant constitute unlawful discrimination against Plaintiff because of Plaintiff's disability in violation of the provisions of Title I of the ADA, as amended, 42 U.S.C. § 12101 et seq.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, KAREN BYERLY, prays for judgment against Defendant and respectfully requests that this Court:

A.    Declare the conduct of the Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B.    Grant a permanent injunction restraining Defendant, its officers, successors, assigns,

and all persons in active concert or participation with them, from engaging in any employment practice, which unlawfully discriminates on the basis of disability;

C.     Order Defendant to make whole KAREN BYERLY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.     Grant Plaintiff any actual, consequential, compensatory, punitive and any other damages that the Court may deem appropriate against Defendant;

E.     Order Defendant to pay lost, foregone, and future wages to KAREN BYERLY;

F.     Grant Plaintiff her attorney's fees, costs, disbursements; and

G.     Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT II - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30.     Paragraphs one (1) through twenty-eight (28) are incorporated by reference as if fully set out herein.

31.     Plaintiff seeks respondeat superior liability against Defendant for the tortious conduct of Supervisor Potkanowicz.

32.     Defendant's Marketing Manager, Supervisor Potkanowicz, has engaged in extreme and outrageous conduct in subjecting Plaintiff to an overt, unbridled, and malicious course of conduct designed to psychologically and emotionally abuse Plaintiff.  Examples of such conduct have been detailed in the preceding paragraphs.

33.     Defendant, acting by and through their officer, Supervisor Potkanowicz, intended to cause Plaintiff severe emotional distress, or knew that there was a high probability that Plaintiff would suffer such distress, when it subjected Plaintiff to a course of conduct designed to

8

psychologically and emotionally abuse Plaintiff.

34.     In her position with Defendant, Supervisor Potkanowicz exercised a substantial degree of control over the terms and conditions of Plaintiff's employment and abused his authority over Plaintiff by subjecting her to outrageous conduct.

35.     Plaintiff has suffered and continues to suffer severe emotional distress as a direct and proximate result of Defendant's extreme and outrageous conduct.

36.     Defendant, acting by and through its officer, Supervisor Potkanowicz, intentionally subjected Plaintiff to egregious and abusive treatment which Defendant knew would cause Plaintiff to suffer severe emotional distress.

37.     Plaintiff continues to suffer the severe emotional and psychological trauma inflected upon her by Defendant and continues to struggle with the effects of Defendant's extreme and outrageous conduct.

38.     The aforementioned extreme and outrageous conduct of Defendant further caused Plaintiff to suffer an elevated level of stress and depression, causing her to suffer severe physical symptoms of pain from her disabilities, resulting in her having to see a neurologist and a neuroscience doctor for the treatment of her symptoms.

39.     The aforementioned acts and omissions of Defendant constitutes intentional infliction of emotional distress, in violation of the laws of the State of Illinois.[1]

## PRAYER FOR RELIEF

---

[1]Despite the similar facts alleged in the previous counts of this First Amended Complaint, Plaintiff's claim for intentional infliction of emotional distress will not be subject to preemption by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/8-111(c), as Count II may be proven independent of the legal duties furnished by the IHRA.  See Naeem v. McKesson Drug Co., 444 F.3d 593, 604 (7th Cir. 2006).

9

WHEREFORE, Plaintiff, KAREN BYERLY, prays for judgment against Defendant and respectfully requests that this Court:

A.    Order Defendant to make whole KAREN BYERLY by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

B.    Grant Plaintiff actual, consequential, compensatory and any other damages that the Court may deem appropriate against Defendant; and

C.    Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

40.    Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this complaint.

Respectfully submitted,
KAREN BYERLY, Plaintiff,


By:    s/Lisa Kane
Lisa Kane, Attorney for Plaintiff

Lisa Kane & Associates, P.C.
Attorney for Plaintiff
120 South LaSalle Street
Suite 1420
Chicago, Illinois 60603
(312) 606-0383
Attorney Code No. 06203093

## Verification

I, KAREN BYERLY, declare under penalty of perjury that the foregoing is true and correct.

Executed August 1, 2008.

KAREN BYERLY

EEOC Form 161-B (3/98)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Karen Byerly**<br>6393 Lone Tree Court<br>Gurnee, IL 60031<br><br>CERTIFIED MAIL  7099 3400 0018 8814 9829 | From:  **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2800**<br>**Chicago, IL 60661** |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

RECEIVED  MAY 15 2008

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2008-05320 | **Zelma Gonzalez,**<br>**Investigator Support Asst** | (312) 886-4821 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*        5/13/08

Enclosures(s)

**John P. Rowe,**
**District Director**

*(Date Mailed)*

cc:    **GENERAL MILLS**